```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
―――――――――――――――――――――――――――――――

ROY LENNOX,

                 Plaintiff,           24-cv-1397 (JGK)

      - against -                    **MEMORANDUM OPINION AND ORDER**

CHUBB NATIONAL INSURANCE COMPANY,

                 Defendant.

―――――――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

The plaintiff, Roy Lennox, brought this action against the defendant, Chubb National Insurance Company ("Chubb"), for breach of contract and declaratory judgment in connection with an insurance coverage dispute. The defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendant's motion to dismiss is **granted**.

**I.**

Unless otherwise indicated, the following facts are taken from the complaint and are accepted as true for purposes of deciding this motion.

The plaintiff is an individual domiciled in New York. Compl. ¶ 8, ECF No. 1. The defendant is a corporation organized under the laws of Indiana, with its principal place of business in New Jersey. Id. ¶ 9.

1

The plaintiff is a collector of fine art, antiques, and antiquities. Id. ¶ 13. Over many years, the plaintiff amassed a collection of ancient Greek and Roman antiquities, which the plaintiff displayed in his personal residences in Manhattan and Southampton. Id. ¶¶ 14, 16.

In February 2023, the plaintiff learned from authorities that many pieces in his collection were possibly looted. Id. ¶ 18. The plaintiff cooperated with an investigation into these possibly looted objects conducted by the Department of Homeland Security and the Manhattan District Attorney's Office. Id. ¶¶ 19-21. In June 2023, the plaintiff was presented with "conclusive" proof that many of the items in his collection had been looted before he had bought them. Id. ¶¶ 22-23. Accordingly, in July 2023, the plaintiff agreed to relinquish possession of 25 looted objects from his home in Manhattan and his residence in Southampton. Id. ¶ 24. There is no evidence that the plaintiff himself had engaged in any criminal activity in connection with his purchase and possession of the antiquities. See id. ¶ 25.

The plaintiff alleges that he insured his collection, including the 25 pieces he relinquished, through the property insurance policy issued by the defendant (the "Policy"), in an amount totaling over $1.2 million. Id. ¶¶ 28-30. The Policy provided the plaintiff with coverage against "all risk of

physical loss to [the plaintiff's] valuable articles anywhere in the world unless stated otherwise or an exclusion applies." Id. ¶ 32; see also Policy at N-1, Ex. 8 to Def. Mot. to Dismiss, ECF No. 18-8. The Policy further provided that "a 'covered loss' includes all risk of physical loss to valuable articles unless stated otherwise or an exclusion applies." Policy at N-3. The Policy also contained various exclusions, including a "Confiscation" exclusion and an "Intentional acts" exclusion. The Confiscation Exclusion provided:

> Confiscation. We do not cover any loss caused by the confiscation, destruction, or seizure of property by or under the order of any government or public authority. But if the confiscation, destruction or seizure of property was ordered by any government or public authority to prevent the spread of fire, we do provide coverage if the loss caused by fire would be covered under this part of your policy.

Id. at N-6. The Intentional Acts Exclusion provided:

> Intentional acts. We do not cover any loss caused intentionally by a person named in the Coverage Summary, that person's spouse, a family member or a person who lives with you. . . . But we do provide coverage for you or a family member who is not directly or indirectly responsible for causing the intentional loss. An intentional act is one whose consequences could have been foreseen by a reasonable person.

Id. at N-5. The Policy defined the words "caused by" as "any loss that is contributed to, made worse by, or in any way results from that peril." Id.

In July 2023, the plaintiff submitted a claim under the Policy to the defendant, seeking compensation for the loss of

3

the antiquities. Compl. ¶ 38. The defendant acknowledged receipt of the plaintiff's claim. Id. In late July and early August 2023, the defendant allegedly stated to the plaintiff's counsel that the defendant was considering the plaintiff's claim but had yet to make a coverage determination. Id. ¶ 39. The defendant issued a reservation of rights letter on August 8, 2023. Id. ¶ 40.

On August 24, 2023, the defendant's counsel wrote to the plaintiff's counsel that the defendant's "investigation into the above-referenced loss is ongoing." Id. ¶ 41. The defendant's counsel also requested from the plaintiff a sworn proof-of-loss statement, an in-person examination under oath by the defendant's counsel, and production of documents. Id. The plaintiff alleges that, in a telephone call, the defendant's outside counsel assured the plaintiff's counsel that the defendant would not be undertaking this comprehensive evaluation if there were no possibility of coverage. Id. ¶ 42. The plaintiff complied with the defendant's requests. Id. ¶ 43. And in October 2023, the defendant's counsel deposed the plaintiff for two-and-a-half hours, during which the defendant's counsel allegedly referred to the 25 pieces as the "lost items." Id. ¶ 44.

On January 10, 2024, the defendant issued a letter denying coverage for the "loss of 25 antiquities." Id. ¶ 45. The

defendant denied coverage because "the loss was not fortuitous" and because the plaintiff "either (1) voluntarily turned over the Antiquities—in which case its loss was not fortuitous and the loss was due to an intentional act excluded under the Policy's 'Intentional acts' exclusion—or (2) the Antiquities were confiscated or seized by a governmental authority—in which case its loss is not covered pursuant to the Policy's 'Confiscation' exclusion." Id. ¶ 45.

On February 23, 2024, the plaintiff filed this lawsuit against the defendant, asserting a breach of contract claim and seeking declaratory relief. The defendant has moved to dismiss the complaint for failure to state a claim.

## II.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).[1] To survive a motion to dismiss, the plaintiff's

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III.

The defendant moves to dismiss the complaint, contending that (1) the loss in this case was not a "covered loss" under the Policy; (2) the loss fell within the Policy's Confiscation Exclusion; and (3) the loss fell within the Intentional Acts Exclusion. The plaintiff resists the motion and argues, in addition, that the defendant did not assert the first ground for

dismissal in the defendant's letter denying coverage, and the defendant is estopped from raising it now.

**A.**

The defendant argues that coverage was not triggered in the first instance. According to the defendant, the Policy does not cover the plaintiff's claim because the loss suffered by the plaintiff was neither "physical" nor fortuitous.

An "all-risk" policy, like the Policy in this case, allows recovery "for all losses arising from any fortuitous cause, unless the policy contains an express provision excluding the loss from coverage." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 41 (2d Cir. 2006). Under New York law, it is well-established that a policyholder bears the initial burden of showing that the insurance contract covers the loss. Roundabout Theatre Co., Inc. v. Cont'l Cas. Co., 751 N.Y.S.2d 4, 7 (App. Div. 2002). The fact that a policy is an "all-risk" policy does not relieve the policyholder of this initial burden. Id.

A policyholder also has the initial burden of establishing that the loss was fortuitous. Int'l Multifoods Corp. v. Com. Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002). Under an all-risk policy, this burden is "relatively light." Id. "A loss is fortuitous unless it results from an inherent defect, ordinary wear and tear, or intentional misconduct of the insured." Id.

7

In this case, the Policy covers "<u>all risk</u> of <u>physical loss</u> to valuable articles unless stated otherwise or an exclusion applies." Policy at N-3 (second emphasis added). The defendant characterizes the plaintiff's loss as a problem of defective title, which is an intangible legal defect, rather than a physical one. The plaintiff counters that his loss is physical in nature because the antiquities have been removed from his collection permanently; he no longer physically possesses them.

At bottom, the plaintiff's claim stems from defective title. That the plaintiff physically relinquished the antiquities is not the end of the inquiry. Physical dispossession caused by defects in title is different from physical dispossession caused by, for example, theft. The complaint alleges that the 25 objects were stolen property and that, once the plaintiff learned that fact, the plaintiff relinquished all the looted artifacts so that they could be returned to their rightful owners. Although the plaintiff purportedly bought the objects in good faith, the fact that the objects were stolen meant that title was defective.

<u>Dae Associates, LLC v. AXA Art Insurance Corporation</u>, 70 N.Y.S.3d 500 (App. Div. 2018), is instructive. In <u>Dae</u>, the plaintiff art gallery unknowingly sold stolen artwork to purchasers, who later returned the stolen work to its rightful owner and sued the gallery for, among other things, breach of

8

the gallery's warranty. Id. at 501; Dae Trial Ct. Tr. at 7, Ex. E to Grossman Decl., ECF No. 20-5. The gallery then sought, unsuccessfully, coverage under a policy that insured "all loss or damage to insured property" for the gallery's liability to the purchasers. Dae, 70 N.Y.S.3d at 501. The Dae court affirmed the trial court's dismissal of the gallery's complaint, holding that the insurance policy at issue "did not apply to [the] plaintiff art gallery's contractual liability to purchasers of stolen artwork that was returned to its rightful owner." Id. Crucially, the court continued: "Defective title is clearly not a physical loss or damage from any external cause." Id.

The plaintiff contends that Dae is not on point because the insured in that case, the gallery, suffered a purely contractual and monetary loss, not a physical dispossession. See id. (observing that the gallery "did not possess the artwork at the time the purchasers demanded a refund"); see also Trial Ct. Tr. at 27–28, 34. It is true that the gallery's contractual liability was a focus in Dae and is not at issue in this case. However, the Dae court proceeded to analyze the relevant issue of whether defective title constitutes a "physical loss," and relied on cases from other jurisdictions that are directly on point. See Com. Union Ins. Co. v. Sponholz, 866 F.2d 1162, 1162–63 (9th Cir. 1989) (rejecting the plaintiff's argument that the "all risks" casualty policy covered "seizure of the trawler

9

because it was stolen," and concluding that "[t]he district court was correct in distinguishing title insurance and casualty insurance"); Nevers v. Aetna Ins. Co., Inc., 546 P.2d 1240, 1240-41 (Wash. Ct. App. 1976) (holding that, where the plaintiff discovered that he had purchased a stolen boat and surrendered it to the true owner, the plaintiff's insurance policy's coverage of "all risks of physical loss or damage" did not "encompass a loss of the boat due to a defective title").

In this case, the Policy does not cover the plaintiff's claim because defective title is not a "physical loss." Indeed, other courts have determined that policyholders similarly situated to the plaintiff in this case had defective title and did not suffer a "physical loss." See Com. Union Ins., 866 F.2d at 1162-63; Nevers, 546 P.2d at 1240-41; Eveden, Inc. v. N. Assur. Co. of Am., No. 10-cv-10061, 2014 WL 952643, at *5 (D. Mass. Mar. 12, 2014) (concluding that a policy insuring "all risks of physical loss or damage" did not cover the policyholder's claim because "[i]ntangible losses, such as a defect in title or a legal interest in property, are generally not regarded as 'physical' losses in the absence of actually physical damage to the property"); Gerald Metals, LLC v. Certain Underwriters Subscribing to Marine Cargo Ins. Policies, No. FST-CV-17-6031032-S, 2023 WL 5217779, at *15 (Conn. Super. Ct. Aug. 10, 2023) (finding that, where the plaintiff did not receive

material that it had purchased because that material had been "seiz[ed] by local authorities and sold to another party," the plaintiff's claim did not involve "physical loss or damage from any external cause," and the plaintiff was therefore not entitled to recover under the insurance policy).

The cases relied upon by the plaintiff are inapposite. For example, in Tiffany & Co. v. Lloyd's of London Syndicates, the Supreme Court, New York County, denied the defendant insurance companies' motion for summary judgment seeking, in relevant part, to dismiss the plaintiff's breach of contract claim. 211 N.Y.S.3d 894 (Sup. Ct. 2024). The plaintiff in Tiffany sought insurance coverage for the alleged loss of precious metals while the metals had been in the possession of a third-party vendor. Id. at *1. The plaintiff had delivered the metals to the vendor for refining; when the vendor later went bankrupt, the vendor reported that the plaintiff's assets had been sold or were otherwise irretrievable. Id. at *2. The plaintiff then filed a claim for coverage under the all-risk insurance policy issued by the defendants, which covered "all physical loss and/or damage occurring during the period of insurance arising out of any cause whatsoever" to the plaintiff's property. Id. at *3. The defendants contended, among other things, that the policy covered only "injury to, destruction of, or theft of tangible property"—not the kind of permanent physical loss of the

11

plaintiff's metals that had allegedly occurred. Id. at *23. The court rejected the defendants' argument and concluded instead that, depending on whether the transactions between the plaintiff and the vendor were sales or bailments, "Tiffany's permanent physical loss of the metals is not necessarily disqualified" from coverage for physical loss under the policy. Id. at *24. However, there was no allegation in Tiffany that the metals lost, for which the plaintiff sought insurance coverage, had been stolen property to begin with. Tiffany did not address the question whether defective title is a physical loss. Rather, Tiffany merely supports the more general proposition that physical dispossession of property can constitute a covered physical loss.

    The plaintiff also argues that the Policy did not specify that it covered only "direct physical loss or damage," unlike the policies involved in some of the cases cited by the defendant. But an all-risk property insurance policy need not include the "direct" modifier to exclude defects in title from coverage. See Dae, 70 N.Y.S.3d at 501 ("Despite the fact that the phrase 'loss or damage' in the policy was not qualified by terms such as 'direct' or 'physical,' we may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.").

Ultimately, the Policy in this case was for property insurance, not title insurance. As the defendant points out, title insurance, which is distinct from property insurance, covers risks related to the legitimacy of title.[2] See, e.g., Com. Union Ins. Co., 866 F.2d at 1163 ("Title insurance has been regarded as a separate type of contract not falling within any of the three basic classes of insurance. . . . It is not reasonable to interpret a policy so broadly that it becomes another type of policy altogether."); HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co., 527 N.E.2d 1179, 1180 (Mass. App. Ct. 1988) ("[I]f 'all risk' coverage were as broad as the plaintiff argues, there would be little reason for one to purchase title insurance.").

The plaintiff responds that the defendant's reading of the Policy cannot be squared with the existence of the Confiscation Exclusion, which—according to the plaintiff—applies to situations where there has been a loss but no physical damage to the insured property. However, the Policy must be interpreted sequentially: the exclusions become relevant only if coverage would otherwise exist in the first place. See, e.g., Com. Union

---

[2] The plaintiff claims that it is an "undisputed fact" that no insurance carrier in the country offers title insurance for the type of property at issue in this case. See Pl. Opp. at 8, ECF No. 19. However, the plaintiff offers no support for this assertion. In any event, this "fact" is not alleged in the complaint and would not expand the coverage for property insurance.

13

Ins. Co. v. Flagship Marine Servs., Inc., 190 F.3d 26, 33–34 (2d Cir. 1999) ("An exclusion from insurance coverage cannot create coverage."); see also John Gore Org., Inc. v. Fed. Ins. Co., No. 21-cv-2200, 2021 WL 6805891, at *8 (S.D.N.Y. Dec. 8, 2021), report & recommendation adopted, 2022 WL 873422 (S.D.N.Y. Mar. 23, 2022) ("[I]f the allegations of the Complaint do not trigger coverage under the plain meaning of the policy, there is no need to look at policy exclusions.").

Accordingly, the alleged loss was not covered under the Policy. It is unnecessary to address the parties' arguments as to fortuity and the Policy's exclusions.

**B.**

The plaintiff argues that the defendant should be estopped from denying coverage. The plaintiff alleges that the defendant's now-cited rationale for denying the plaintiff's claim—that the plaintiff's loss was caused by defective title—was not raised in the defendant's initial letter denying coverage, and in fact was not asserted until this litigation was underway.

"Estoppel . . . arises where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment. . . . Thus, estoppel requires a showing of prejudice to the insured." Burt Rigid Box,

14

Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 95 (2d Cir. 2002).

In this case, the plaintiff has failed to allege plausibly that the defendant acted in a manner inconsistent with a lack of coverage. The complaint alleges that: the plaintiff submitted his claim to the defendant in July 2023; later that month and early the next month, the defendant communicated to the plaintiff's counsel that the defendant was still considering the plaintiff's claim; on August 8, 2023, the defendant issued a reservation of rights letter; and on August 24, 2023, the defendant stated to the plaintiff's counsel that the defendant's investigation into the plaintiff's claim was ongoing and requested a proof-of-loss statement, an in-person examination under oath, and production of documents in connection with the claim. The defendant issued its letter denying coverage on January 10, 2024, about six months after the plaintiff submitted his claim. At some point during the investigation, the defendant's outside counsel allegedly told the plaintiff's counsel that the defendant "would not be undertaking this comprehensive evaluation if there were no possibility of coverage." Compl. ¶ 42. Even this statement is not "inconsistent with a lack of coverage," Burt Rigid Box, 302 F.3d at 95, because the statement indicated that coverage was only a

15

"possibility," and that a "comprehensive evaluation" was still ongoing, Compl. ¶ 42.

In any event, an insurer's reservation of rights generally precludes arguments as to estoppel. See Globecon Grp., LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 176 (2d Cir. 2006); see also Rapid Park Indus. v. Great N. Ins. Co., 502 F. App'x 40, 42 (2d Cir. 2012) ("Estoppel arguments are precluded where an insurer repeatedly and expressly reserved its rights in its communications with the insured."). That the defendant in this case did not rely on the specific ground now asserted in denying coverage initially does not change the analysis. See, e.g., Pereira v. Gulf Ins. Co., 330 F. App'x 5, 6 (2d Cir. 2009) (rejecting the insured's argument that the insurers were estopped from denying coverage based on certain exclusions where the defendants' initial letter had not raised those grounds, but the insurers had timely reserved their rights to decline coverage); Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co., 807 N.Y.S.2d 62, 67 (App. Div. 2006) ("The reservation [of rights] is a sufficient preventative to reliance [of the insured] even if the insurer later disclaims on a basis different from the ground originally asserted in the reservation of rights.").

Moreover, the plaintiff has not adequately alleged that he was prejudiced by the defendant's conduct. The plaintiff alleges

16

merely that he was prejudiced because he was required to "submit to Chubb's lengthy and comprehensive investigation, expending his own time as well as significant legal fees and expenses to do so." Compl. ¶ 55. But it is not plausible to infer from the fact that the plaintiff had to participate in Chubb's investigative process as set forth in the Policy, and incurred costs in doing so, that the plaintiff suffered prejudice. See Inc. Vill. of Old Westbury v. Am. Alternative Ins. Corp., No. 15-cv-7278, 2017 WL 6210874, at *11 (E.D.N.Y. Jan. 19, 2017), report and recommendation adopted, 2017 WL 6210850 (E.D.N.Y. Mar. 31, 2017), aff'd, 710 F. App'x 504 (2d Cir. 2018) (concluding that the "simple reality" that the insured was "liable for up to $100,000 in legal fees, expenses, and damages" was insufficient to establish prejudice that warranted estoppel).

Accordingly, the defendant is not estopped from denying coverage.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted**. The Clerk is respectfully directed to enter judgment dismissing the complaint

17

with prejudice. The Clerk is also directed to close this case and to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **January 16, 2025**

_____
John G. Koeltl
United States District Judge